## DEAN COBB *vs.* SYLVESTER CHARTER.

Wherever money is paid under a necessity to obtain possession of goods illegally withheld, and where the detention is fraught with great immediate hardship or irreparable injury, the payment is held to be compulsory, and the money paid can be recovered back in an action of assumpsit.

The defendant had possession of a chest of tools belonging to the plaintiff, who was a mechanic, and refused to give it up unless the plaintiff would pay a bill for board which the defendant had against the plaintiff's son, for which the plaintiff was in no manner liable. The plaintiff left the amount with a friend who resided near the defendant, directing him to pay the money on the chest being delivered up. The friend informed the defendant of this, and the latter soon after sent the chest to the plaintiff. The friend ascertaining that it had been sent, paid him the money. Held, that the payment was not to be regarded as a voluntary one, and that the amount paid could be recovered back.

The defendant had sent word to the plaintiff that he could have his chest, if he would pay the defendant's bill of a certain amount against his son. The plaintiff sent the money to a third person, who informed the defendant that he held the money and would pay it if the chest was delivered up. Held, that there was a sufficient demand for the chest.

Held also, that no demand for the money was necessary.

The first count in the declaration was general assumpsit. A second count, very loosely drawn, set out the facts of the illegal detention of the chest by the defendant, his refusal to give it up until the money was paid, the great damage to the plaintiff in being deprived of his chest, and the final payment of the money by the plaintiff to recover it, but alleged no promise of the defendant to pay the money sought to be recovered. On a motion in error on the ground that the second count was in tort and misjoined with the first, it was held that, as the second count averred all the facts from which the law would infer a promise, it might properly be regarded as a defective count in assumpsit.

GENERAL ASSUMPSIT for money had and received ; with a second count alleging that a certain chest of tools belonging to the plaintiff and used by him in his trade as a joiner, which was in the possession of the defendant, was wrongfully detained by him, though demanded by the plaintiff, and that the defendant refused to deliver it up until the plaintiff should pay him $25 ; that the plaintiff had sustained great damage by being deprived of the chest and by being unable to work at his trade in consequence, and that he afterwards paid the $25 to recover the chest ; all which was to his damage the sum of fifty dollars. The case was brought originally before a justice of the peace, and appealed by the defendant to the superior court and tried to the jury in the latter court on the general issue, before *Phelps, J.*

Upon the trial the plaintiff, who resided in the town of New Haven, claimed to have proved that in the fall of 1862, and prior to the first of October of that year, he had been for some time at work as a mechanic in the town of Enfield, and

while there had boarded with the defendant who was a hotel keeper there; that about the first of October he settled with the defendant for his board, and returned to New Haven, leaving his tool chest and tools with orders to have them forwarded to him; that they were not sent as he expected, and that after some time had elapsed he received an anonymous letter which he claimed was written by the defendant, or by his procurement, stating that his chest was safe, and that if he would send him $25 to pay a debt which Charles Cobb, a son of the plaintiff, owed the defendant for board, he would get his chest; that the defendant said on different occasions to other persons that if the plaintiff would settle his son's bill he would get his chest; that in consequence of receiving the letter the plaintiff put into the hands of one Rufus Stratton of Enfield the sum of $25, to be paid by him to the defendant, provided the defendant would deliver to him or forward to the plaintiff his chest; that Stratton called on the defendant and informed him of the directions which he had received from the plaintiff, and that the defendant replied that Charles Cobb owed him more than $25, but that he would be very glad to get that sum, but claimed that he had no knowledge of the plaintiff's chest. The plaintiff did not claim to have proved any other demand on the defendant for the chest than what is shown by the foregoing facts, but claimed to have proved that Stratton finally paid the $25 to the defendant, upon being informed by him that the chest had been delivered or forwarded to the plaintiff.

The plaintiff claimed to recover the money so paid upon the ground that the defendant had compelled him to pay it to obtain the possession of the chest and tools, which the defendant had in his possession or under his control and unjustly detained from him; and that the money was tortiously received of him by the defendant; and requested the court to instruct the jury that if the defendant illegally detained the chest and tools, and received the $25 tortiously as claimed by him, he was entitled to recover. The defendant requested the court to instruct the jury that a demand must have been made, by the plaintiff or his agent, on the defendant for the

chest, and that the defendant must have refused to comply with such demand, or the plaintiff could not recover ; also that if the chest had been found and restored to the plaintiff as he claimed, and the money was afterwards paid by the plaintiff, such payment was voluntary, and the money could not be recovered back ; also that upon the facts, as the plaintiff claimed to have proved them, the contract with the defendant was a valid one, and the defendant had a right to receive the money and apply it in payment of the debt due to him from Charles Cobb ; also that the plaintiff was not entitled to recover without having shown a demand upon the defendant for the money before the commencement of the suit.

Upon the foregoing claims of the parties the court instructed the jury, that a payment made by the owner to procure the possession of goods unjustly detained by another would not be a voluntary payment, and that if they should find that the defendant had in his possession or under his control the plaintiff's chest and tools, and that he refused to deliver or allow the plaintiff to take them unless the plaintiff would first pay him a sum of money which he was otherwise under no obligation to pay but which he did in fact pay to the defendant, the law implied a promise by the defendant to repay the same to the plaintiff, and that the plaintiff was entitled to recover back the money so paid under the common counts in his declaration ; but that if they did not find as the plaintiff claimed that the defendant had the chest in his possession or under his control, and unjustly detained the same, and received the plaintiff's money tortiously, in the manner claimed by the plaintiff, their verdict should be for the defendant.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for error in the charge of the judge. He also moved in arrest of judgment on the ground of the insufficiency of the declaration by reason of a misjoinder of counts, which motion was reserved with the other for the advice of this court. He also filed a motion in error, assigning for error the misjoinder of the counts.

VOL. XXXII. 46

*Doolittle*, in support of the motions.

1. The declaration is insufficient. The second count is a count in tort, joined with a count in assumpsit. The second count is clearly not a count in assumpsit; it possesses none of the elements or characteristics of an action *ex contractu.* The first section of this count sets forth, first, the ownership and possession of the plaintiff; secondly, that the property has come into the possession of the defendant; and thirdly, the refusal of the defendant to deliver the articles upon the demand of the plaintiff. The second and third sections set forth that the defendant refused to deliver up the articles unless the plaintiff would pay the sum of $25. The fourth section says that the plaintiff was compelled to pay the $25 to get his tools. We have then a count in case for extortion, containing substantially all the elements of a good cause of action. But whatever it may be, it alleges no promise of the defendant, and is clearly not a count in assumpsit.

2. No case has yet been decided that where a person pays money under duress of goods it can be recovered back. 1 Parsons on Cont., 320 ; *Foshay* v. *Ferguson*, 5 Hill, 158 ; 1 Swift Dig., 111 ; *Hazelrigg* v. *Donaldson*, 2 Met., (Ky.) 445 ; *Sheldon* v. *South School District*, 24 Conn., 88. The contract made by the plaintiff to pay the defendant, if the defendant would restore his goods, was a valid one. 1 Parsons on Cont., 320 ; *Skeate* v. *Beale*, 11 Ad. & El., 983 ; *Foshay* v. *Ferguson*, 5 Hill, 158 ; *Walbridge* v. *Arnold*, 21 Conn., 424. But the plaintiff instructed his agent Stratton, and "left the money in his hands, with directions to pay it to the defendant if the chest was delivered." When the plaintiff's agent received information from the plaintiff, at all events from other sources than the defendant, that the chest had been actually delivered to the plaintiff, he paid the money to the defendant. The plaintiff did not pay this money then *for the purpose of recovering* possession of the chest, for he had received that, nor under duress of his chest, for it was not in the defendant's possession to exercise duress over ; it was in the plaintiff's possession when he paid this money. Such a payment was a voluntary one and the money can not be

recovered back. But the plaintiff paid the defendant under a contract to pay him, and the defendant received the money so paid as a matter of right under the contract, and on this ground it can not be recovered back. A contract made under -duress of imprisonment, or of danger to life, is not void, but voidable, and may be ratified and affirmed by the party upon whom the duress was practiced. 1 Parsons on Cont., 322. At all events, the plaintiff having paid money to the defendant under a contract, and the defendant having received it under a contract, it was incumbent on the plaintiff to prove a demand before the institution of a suit.

*C. Ives*, with whom was *Wood*, contra.

1. There is no misjoinder of counts. The count for money had and received as generally framed, and as used in this case, gave neither to the court nor to the defendant any true conception of the plaintiff's real cause of action. It was eminently proper that in an " equitable action " the plaintiff should so set out his case in his declaration as to " show that he has equity and conscience on his side." This is done by the second count. 1 Selw. N. P., 71. The count is not necessarily in tort because it does not allege a promise. It may be a defective count in assumpsit. A declaration in assumpsit which does not contain the word " promised " is good, provided it sufficiently appear from the whole declaration that what is equivalent to a promise has taken place. 1 Chit. Pl., 301; *Avery* v. *Inhabitants of Tyringham*, 3 Mass., 160; *Kingsley* v. *Bill*, 9 Mass., 198. All the facts in the new count are stated which are essential to a recovery in assumpsit, and if a promise had been alleged in terms it would have been a legal fiction. The court ought not to deny to the plaintiff justice because he has omitted to allege an untruth. *Bailey* v. *Bussing*, 29 Conn., 1. In *Seymour* v. *Maddox*, 5 Eng. L. & Eq., 265, it was held that in cases " where the facts set out are sufficient, and such as the law would raise a duty from, it is unnecessary to allege the duty." It is not a count in case because it describes a tortious act of the defendant. " Actions for money had and received may be sustained where

the money was received tortiously." 1 Chit. Pl., 100, 352. And in stating in the declaration the facts upon which the law raises an implied promise to repay, the wrongful acts are properly stated in assumpsit. The conclusion of the count, it is true, is like the conclusion of a count in case, and in this respect it is untechnical, but the conclusion may be rejected as surplusage. *Pharr* v. *Bachelor*, 3 Ala., 237 ; *Bell's Admr.* v. *Troy*, 35 id., 184 ; *Powell* v. *Kinney*, 6 Blackf., 359.

2. The verdict ought not to be disturbed. Substantial justice has been done. *Johnson* v. *Blackman*, 11 Conn., 342. It is not a case of defective title, but at most of a title defectively set forth. Stephen's Pl., 149. No damage has resulted to the defendant from the untechnical character of the count. *Bates* v. *Coe*, 10 Conn., 291. Taken in connection with the charge of the judge, the verdict may be considered as having been rendered on the first count.

3. The charge contains sound law. Under it the jury must have found that the defendant tortiously retained the plaintiff's goods, and that the plaintiff was compelled to pay money to get them. If so the defendant was legally liable to repay it, and no demand was necessary before suit was commenced.

McCURDY, J. In this case the honesty of the plaintiff's claim and the justice of the verdict are undenied. His tools and implements of trade necessary for upholding life were detained from him by the defendant until they were redeemed by the payment of money to which the defendant had no shadow of right. The defense is strictly technical throughout.

The first and principal ground is that the payment was voluntary. It is undoubtedly a general rule that money paid voluntarily, without fraud and with a full knowledge of all the facts, can not be recovered back by the party who has so paid it. He is bound to resist an unjust demand in the first instance. To pay when he could successfully defend against it, and then sue for the money, is a species of frivolity, involving also a circuity of action, which the law does not encourage. The rule is founded on the presumption that defending

in such a suit would afford adequate redress. There are many exceptions to it, or rather many instances in which the payments having been made under the pressure of an enforced emergency, are not considered voluntary, but compulsory in law. Among the more common of these cases are illegal exactions of tolls, fees of office, taxes, revenue duties, &c., under an alleged authority of law. An early case of this kind occurs in our own reports, *Carey* v. *Prentice*, 1 Root, 91, where the plaintiff's vessel was detained by the defendant, commander of the fort at New London, because the plaintiff had not given bond according to law, and the plaintiff paid him $145 to let him go to sea without giving bond. The money was recovered back. In other cases where the money is not extorted in this manner, it is not always easy to distinguish between voluntary and compulsory payments, and the decisions are apparently conflicting. But it is safe to say that wherever money is paid through a necessity to obtain possession of goods illegally withheld, and where the detention is fraught with great immediate hardship, or irreparable injury, the payment is held to be compulsory. It is said in 1st Swift's Digest, 407, that " a payment made to procure the possession of goods which another unjustly detains, or to prevent goods which have been distrained from being sold, is not voluntary." *Shaw* v. *Woodcock*, 7 Barn. & Cress., 73 ; *Hills* v. *Street*, 5 Bing., 37. In the 1st Volume of Espinasse's Nisi Prius, pages 14 and 192, assumpsit is said to lie generally " to recover back money obtained from any one by extortion, imposition, oppression, or taking an undue advantage of the party's situation." *Moses* v. *Macferlan*, 2 Burr., 1012. In *Oates* v. *Hudson*, 5 Eng. Law & Eq. Rep., 469, the plaintiff paid money to an attorney to obtain his title deeds, saying at the time to the defendant, " you shall hear of this again," and the action of assumpsit was sustained. See also *Cartwright* v. *Rowley*, 2 Esp., 723. In *Astley* v. *Reynolds*, 2 Stra., 915, money unjustly exacted to obtain plate which had been pawned, was allowed to be recovered back. In *Maxwell* v. *Griswold*, 10 Howard, 242, the principle is laid down that " in order to constitute an involuntary payment so that the money may be recovered

back, it need not be made under actual violence or physical duress; it is enough that the party pays reluctantly in consequence of an illegal demand, and without being able to regain possession of his property except by submitting to the payment." Among other authorities on this subject are, *Sasportas* v. *Jennings*, 1 Bay, 468; *Collins* v. *Westbury*, 2 id., 211; *Alston* v. *Durant*, 2 Strobh., 257; *Chase* v. *Dwinal*, 7 Greenl., 134; *Fleetwood* v. *City of New York*, 2 Sandf., 475; *Harmony* v. *Bingham*, 2 Kernan, 99; *Shaw* v. *Woodcock*, 9 Dow. & Ryl., 889; *S. C.*, 7 Barn. & Cress., 73; *Bates* v. *N. York Ins. Co.*, 3 Johns. Cases, 238.

The circumstances of the present case furnish a striking illustration of the necessity of the principle which we sustain. The plaintiff was a mechanic. His chest of tools, which are held by statute sacred even from the touch of a creditor, were seized by the defendant. He refused to deliver them to the owner on demand except upon his paying, without the slightest obligation, the debt of another person. The plaintiff was thus deprived of the means of his support. Thereupon he left the money with Stratton to be paid to the defendant when the chest should be sent. Stratton so informed the defendant, who at once sent the chest and then received the money.

In view of such extortion, oppression, and taking an undue advantage of the plaintiff's situation, it seems somewhat bold in the defendant to come into a court of justice and assert that the payment was voluntary.

A question is raised as to the sufficiency of the demand. It is difficult to see what further was necessary beyond what was done. The demand for the chest was both general and special. In relation to the money illegally extorted, it stands upon the same ground as though it had been taken from the plaintiff's pocket.

There remains another technical question growing out of the form of the declaration. The motion in arrest and motion in error turn upon the same point, a supposed misjoinder of the counts.

The first count is the general one, and is undoubtedly pro-

per and sufficient.   The second count contains a particular relation of the facts upon which the plaintiff seeks to recover. It is inartificially drawn and contains superfluous averments, but substantially it is a full statement of the circumstances out of which the law implies a promise of the defendant to pay the plaintiff's demand, for the recovery of which, as we have seen, assumpsit is the appropriate action.   The elements of the plaintiff's right are well set out, and the defect is one of form.   The result of the trial is confessedly just.   The defendant has experienced no injury from the looseness of the count, and we see no reason to disturb the verdict.

In this opinion the other judges concurred.