## DuVALL *v.* NORRIS *et al.*

Voluntary payments, though illegally demanded, can not be recovered back. But a payment made for the purpose of recovering possession of personal property wrongfully detained is not voluntary, and may be recovered back. Especially is this true when the owner does not know and can not ascertain who has possession of the property, but makes the payment to a third person to be used in securing the release of the goods.

Submitted March 16, — Decided March 31, 1904.

Certiorari.    Before Judge Gary.    Richmond superior court. April 3, 1903.

*J. J. Zachry,* for plaintiff.    *C. H. Cohen,* for defendants.

COBB, J.  This was an action to recover back money alleged to have been paid in consequence of an illegal demand therefor. The case originated in a justice's court, where a judgment was rendered in favor of the plaintiff.    This judgment was set aside by the superior court, on the hearing of a certiorari sued out by the defendants.    The undisputed facts of the case, as shown by the

answer of the magistrate, were, in substance, as follows: Plaintiff lost a diamond ring, and, supposing that the ring had been stolen, reported the matter to the chief of police, telling him whom she suspected. The chief put a detective to work on the case, and in a short time the ring was located in a pawnbroker's shop. Some days after reporting the loss of the ring, plaintiff met the chief of police, when he stated to her, in effect, that he knew where her ring was, and would get it for her if she would pay him $38. Plaintiff at this time refused to pay the sum demanded, and requested the chief to furnish her with the name of the person who had the ring. This the chief declined to do, asking plaintiff if she desired to prosecute the person whom she suspected to be the thief. Plaintiff afterwards saw the chief, when he again refused to give the name of the person who had the ring, again stating that he would not get the ring for plaintiff unless she would pay him $38. Thereafter plaintiff received information from an attorney at law that a pawnbroker had the ring, and that it would be necessary for her to pay the $38. Plaintiff again refused to make the payment, and again demanded from the chief of police the name of the person who had the ring. This time the chief told her that "a railroad man" had the ring. She thereupon had a possessory warrant issued for a railroad man whom she suspected, but afterwards had the warrant dismissed, being unable to procure any evidence that this person had the ring. She then employed an attorney to look after the matter for her, and she and her attorney called upon the chief of police and requested him to give them what information he had as to the whereabouts of and as to the person who had the ring. The chief stated that he would have nothing to do with the matter, but would get the ring if they would pay him $38. The attorney then demanded the information of the chief, and he refused to give it. A similar conversation between the chief and the attorney took place again; and finally plaintiff, on the statement of her attorney that it was the only way to get the ring, drew a check for $38.50, payable to her attorney. On the next day after this, plaintiff and her counsel called on the chief, with the money, when he produced the ring. The chief paid the money to the defendant Schaul, a pawnbroker, to whom the ring had been hypothecated by some one, it does not appear whom. Taking the evidence as a whole, it demanded a finding that the ring was

pawned without the knowledge or consent of the plaintiff.    No errors of law are complained of; and the sole question is, whether, under the facts above stated, the plaintiff was entitled to recover the amount of money paid the chief of police.

The judge of the superior court rendered his judgment against the plaintiff, on the idea that the payment was voluntary.    We have been unable to take this view of the evidence.    No one will, of course, dispute the right of the plaintiff, under the evidence, to recover her ring without the payment of any sum whatever; and therefore the demand of the pawnbroker, which came through the chief of police, was illegal.    Voluntary payments can not be recovered; but "it is well settled that a payment under protest, made to secure the delivery of the possession of personal property wrongfully withheld from the payor, may be recovered back on the ground that the payment was compulsory."    22 Am. & Eng. Enc. L. (2d ed.) 617.    Numerous English and American decisions are cited in support of this text.    This was the rule at common law, and has been adopted and followed by many of the American States.    Thus, in Ashley v. Reynolds, 2 Strange, 916, a person pawned plate, and, in order to recover possession thereof, paid to the pawnbroker a sum in excess of that which he had a right to demand for the redemption of the plate.    It was held that the excess might be recovered.    See also Cobb v. Charter, 32 Conn. 358, 87 Am. Dec. 178, and cit.; Elliott v. Swartwout, 10 Pet. 137. Many other cases to the same effect might be cited.    Our own court has applied the rule.    In *Barnett* v. *Central Line of Boats,* 51 *Ga.* 439, it was held that if a carrier who has made a contract of carriage with an owner of goods pays to another carrier who has wrongfully obtained possession of the goods the amount of freight which the owner was required to pay under his contract, in order to obtain possession of the goods for the purpose of complying with his contract, he can recover the amount so paid.    This decision is very closely in point, if not controlling in the present case.    Indeed the present case seems to be much stronger; for here the plaintiff did not know where her property was, and so could not avail herself of any of the remedies afforded by law for its recovery.    See also, in this connection, *First National Bank* v *Americus,* 68 *Ga.* 123.    Prior to 1895 we had no code provision on this subject, but in that year the general law was embodied in

a section which is as follows: "Payments of taxes or other claims, made through ignorance of the law, or where the facts are all known, and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party, are deemed voluntary, and can not be recovered back, unless made under an urgent and immediate necessity therefor, or to release person or property from detention, or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule." Civil Code, § 3723. It will be observed that under the express terms of this section, money paid to release property from illegal detention may be recovered back. We are of opinion that the judgment of the justice of the peace was right, and that it was error to sustain the certiorari and render a judgment for the defendants. The chief of police and the pawnbroker were sued together as joint wrong-doers; and while there might have been some difficulty in holding the chief liable, inasmuch as the plaintiff in effect instructed him to pay the money to the pawnbroker and knew that he did so, no question of this character was raised. The chief of police was content to rest his case upon the same defense as that of the pawnbroker, and to stand or fall with him. *Judgment reversed. All the Justices concur.*